**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **NORTHSTAR TOWERS, LLC.,** | ) | **CASE NO. 1:19CV1345** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **MONTVILLE TOWNSHIP,** | ) | **OPINION AND ORDER** |
| **MEDINA COUNTY, OHIO** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J.:**

This matter is before the Court on Defendant's Motion to Dismiss for Lack of Subject

Matter Jurisdiction. (ECF #9). For the following reasons, the Court **DENIES** Defendant's

Motion to Dismiss.

Plaintiff NorthStar is a Delaware limited liability company. Defendant Montville

Township is a local government in the Northern District of Ohio. NorthStar is in the business of

siting and building telecommunications towers and facilities to service cellular telephone

customers. NorthStar is involved in all phases of the business, including the identification of

appropriate sites, acquisition of site interests and contracting for the construction of operational

facilities. (ECF #1 at PageID 2, ¶ 6). According to an agreement with Verizon Wireless,

NorthStar identifies the best and most feasible land location for an antenna when presented with a gap in coverage by Verizon. (ECF #1 at PageID 2, ¶ 7).

At some time around 2017, Verizon identified a gap in coverage in an area of Montville Township and requested that NorthStar identify a suitable location for an antenna to remedy the gap in coverage. NorthStar conducted due diligence to identify a location that would remedy the coverage gap and leased a residential parcel of land on June 23, 2017, to place a new antenna. Through its due diligence, NorthStar determined that there were no alternative locations that would remedy the coverage gap other than the parcel identified. (ECF #1 at PageID 3, ¶¶ 8-10).

Montville Township has a zoning resolution that requires a conditional use permit to be issued for telecommunications tower projects. NorthStar submitted an application for this permit on November 5, 2018. On November 29, 2018, the Montville Township Board of Zoning Appeals ("BZA") requested supplemental information for the application, which was provided by NorthStar's agent, Jesse Styles, on November 30, 2018. The Montville BZA requested additional information again on December 4, 2018 and advised NorthStar that it would need to give surrounding neighbors notice of the proposed construction. NorthStar issued the required letters and submitted an affidavit confirming that it did so on January 8, 2019. (ECF #1 at PageID 4-5, ¶¶ 16-20).

The Montville BZA held two hearings regarding NorthStar's application. At the first, on March 4, 2019, the BZA requested additional information and tabled the hearing until April 22. At the April 22 hearing, NorthStar presented evidence that it had an agreement with Verizon Wireless, that Verizon identified a gap in coverage, and that NorthStar took reasonable measures to ensure that the selected site was the most feasible location. (ECF #1 at PageID 5, ¶¶ 21-22).

On May 20, 2019, the Montville BZA voted to deny NorthStar's application for a conditional use permit. (ECF #1 at PageID 5, ¶ 23).

On June 10, 2019, twenty-one days after the Montville BZA denied its conditional use permit application, NorthStar filed a Complaint with this Court seeking a Declaratory Judgment that the Montville BZA violated NorthStar's rights under the Telecommunications Act of 1996 ("TCA"), 47 U.S.C. § 332, and an Injunction and Order compelling the Montville BZA to issue the conditional use permit for NorthStar's antenna on its chosen site. (ECF #1).

On July 23, 2019, the Montville BZA moved to dismiss NorthStar's claim for lack of subject matter jurisdiction. In its Motion, the Montville BZA asserts that NorthStar has not met certain state procedural requirements before filing with this Court and that NorthStar lacks standing under the TCA because it does not qualify as a public utility under the TCA. (ECF #9).

On August 12, 2019, NorthStar filed its Opposition to the Montville BZA's Motion. In its Opposition, NorthStar alleges that the Ohio state administrative appeal process has no bearing on claims for violations of the TCA or its standing under § 332(c). (ECF #10).

## <u>LAW AND ANALYSIS</u>

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction to dismiss the other party's claim. Fed. R. Civ. P. 12(b)(1). A court has subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Telecommunications Act of 1996 is a law of the United States.

The Supreme Court has held that the purpose of the TCA is to "promote competition and *higher quality* in American telecommunications services and to encourage the rapid deployment of new telecommunications technologies." *City of Rancho Palos Verdes v. Abrams*, 544 U.S.

113, 115 (2005) (emphasis added). One of the means by which Congress sought to accomplish these goals was "reduction of the impediments imposed by local governments upon the installation of facilities for wireless communications, such as antenna towers." *Id.* Section 332(c)(7)(B) of the TCA outlines the limitations that local zoning authorities are subject to when regulating the placement, construction and modification of personal wireless service facilities. 47 U.S.C. § 332(c)(7)(B). Section 332(c)(7)(B)(i)(II) mandates that the regulation of personal wireless facilities by any local government instrumentality "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." *Id.*

Section 332(c)(7)(B)(v) provides that: "Any *person* adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction." *Id.* § 332(c)(7)(B)(v) (emphasis added). For purposes of this section, the definition of person in § 153 of the TCA applies. Section 153(39) defines a person as any "individual, partnership, association, joint-stock company, trust, or corporation." 47 U.S.C. § 153(39).

Section 332(c)(7)(B)(ii) provides that "A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality." 47 U.S.C. § 332(c)(7)(B)(ii). In its interpretation of this provision, the FCC (the regulatory body created by the original Telecommunications Act), has declared that a period of one-hundred-fifty days is the "reasonable period of time" within which a local government instrumentality must act on a request. *In re Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)*, 24 F.C.C.R. 13994, 13995 (2009) ("The 2009

Declaration"). This time period may be tolled for incomplete applications or missing information. *In re Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment*, 33 F.C.C.R. 9088, 9161 (2018) ("The 2018 Declaration").

    i. <u>Section 332(c)(7)(B)(i)(II) – Effective Prohibition of Wireless Services</u>

The Montville BZA cites a number of state cases dealing with Ohio procedural requirements that were decided before the update to the TCA containing § 332 was enacted in 1996. (ECF #9). These cases hold that following municipal appeals procedures is a jurisdictional requirement for *state* proceedings. The statute at issue before the Court is a *federal* law. Section 332(c)(7)(A) of the TCA does provide that "nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities," but that preservation of local authority is limited by the section immediately following. 47 U.S.C. § 332(c)(7)(A).

NorthStar's Complaint arises under the "Limitations" section of the TCA. *Id.* § 332(c)(7)(B). This section allows "any person" who has been adversely affected by any final local government instrumentality action that is inconsistent with subparagraph 7 of § 332(c) to bring an action in a court of competent jurisdiction. § 332(c)(7)(B)(v). Section 332(c)(7)(B)(i)(II) states that local government instrumentalities shall not have the effect of prohibiting the provision of personal wireless services. § 332(c)(7)(B)(i)(II). In defining what an "effective prohibition" is, the Sixth Circuit has held that "the denial of a single application can constitute a violation of [§ 332(c)(7)(B)(i)(II)]." *T-Mobile Central, LLC. v. Charter Township of West Bloomfield*, 691 F.3d 794, 806 (6th Cir. 2012). Provided NorthStar's allegations are true,

the Montville BZA would have effectively prohibited the provision of personal wireless services by denying NorthStar's application for a conditional use permit.

ii. <u>Section 332(c)(7)(B)(ii) – Reasonable Period of Time and Tolling</u>

Section 332(c)(7)(B)(ii) requires state or local government instrumentalities to act on any request for authorization to place, construct or modify personal wireless service facilities within "a reasonable period of time after the request is duly filed." 47 U.S.C. § 332(c)(7)(B)(ii). In the 2009 Declaration, the FCC determined that a reasonable amount of time for a new construction facility was one-hundred-fifty days and defined this period as the "shot clock." 24 F.C.C.R. at 13995. Here, NorthStar filed its application for a conditional use permit on November 5, 2018. (ECF #1 at PageID 4, ¶ 16). The Montville BZA filed its denial of the application on May 20, 2019. (ECF #1 at PageID 5, ¶ 23). The difference between these dates is one-hundred-ninety-six days.

The 2018 Declaration by the FCC allows for tolling of the "shot clock" when the local government instrumentality is faced with an incomplete application and requests additional information within thirty days of the first filing; or when it is still missing information and requests more information within ten days of the initial request. 33 F.C.C.R. at 9161. Here, the Montville BZA requested additional information from NorthStar on November 29, which is twenty-four days after its first filing. (ECF #1 at PageID 4, ¶ 18). NorthStar supplied the requested information the following day, November 30, 2018. (ECF #1 at PageID 5, ¶ 19). This tolled the "shot clock" for one day.

The Montville BZA requested additional information on December 4, 2018. This was four days after its initial request and within the ten-day tolling period set out by the FCC. NorthStar supplied the Montville BZA with the additional information on January 8, 2019. (ECF

#1 at PageID 5, ¶ 20). This tolled the "shot clock" for thirty-five days. In total, the Montville BZA's reasonable period of time to respond to NorthStar's request was tolled by thirty-six days.

The Montville BZA denied NorthStar's application one-hundred-ninety-six days after it was filed. When tolled by thirty-six days, the Montville BZA denied the application one-hundred-sixty days after filing, which is outside the reasonable, one-hundred-fifty-day period declared by the FCC. 24 F.C.C.R. at 13995. Therefore, provided NorthStar's allegations are true, the Montville BZA would have violated NorthStar's right to a response after a reasonable period of time under § 332(c)(7)(B)(ii).

### iii. Administrative Appeals Process

Section 2506.01(A) of the Ohio Revised Code provides that every final order or decision of any board or other division of a political subdivision of the state "*may* be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located . . .." O.R.C. § 2506.01(A) (emphasis added). The Montville BZA takes this to be a requirement for NorthStar to meet before bringing its claim in this Court. The immediately following section of the Revised Code, however, supplies that "the appeal provided in this section is in addition to any other remedy of appeal provided by law." O.R.C. § 2506.01(B). By allowing any person to bring a claim in federal court after being "adversely affected by a final action of a State or local government . . . that is inconsistent with this subparagraph," § 332(c) acts as a remedy of appeal provided by law. 47 U.S.C. § 332(c)(7)(B)(v). This remedy fits into the alternate appeal permitted by § 2506.01(B) of the O.R.C.

### iv. Final Action Under the TCA

The Montville BZA alleges that filing a notice of appeal under O.R.C. § 2505.04 is a jurisdictional requirement and cites state cases involving state law claims. (ECF #9 at PageID

123).  In citing these cases, the Montville BZA treats its decision as a final action under the TCA by providing holdings that specifically relate to "final orders" by an administrative agency. Additionally, the relevant Montville Township Zoning Resolution sections all refer to approval by the BZA before any permits shall be issued and the BZA is the only entity listed with authority to grant or deny permit applications.  Montville Twp. Zoning Res. §§ 450, 540.5, 730.8.  With these sections and Montville's refusal to grant the conditional use permit, the denial of NorthStar's application can be read as a final decision for purposes of the TCA.  Additionally, the Supreme Court has held that denials by local agencies constitute final orders for purposes of § 332(c) of the TCA.  *See City of Rancho Palos Verdes*, 544 U.S. at 118-19.

## CONCLUSION

NorthStar filed its Complaint in response to the Montville BZA's May 20th denial of its application on June 10, within the thirty-day period proscribed under § 332(c)(7)(B)(v) of the TCA.  47 U.S.C. § 332(c)(7)(B)(v).  In its Complaint, NorthStar raises federal questions, specifically whether its rights have been violated under Sections 332(c)(7)(B)(i)(II) and 332(c)(7)(B)(ii) of the TCA.  Since NorthStar raises federal questions, subject-matter jurisdiction is appropriate under 28 U.S.C. § 1331.  Accordingly, the Montville BZA's Motion to Dismiss for Lack of Subject-Matter Jurisdiction is **DENIED.**

**IT IS SO ORDERED.**

**Dated: November 1, 2019**

 **s/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**